ASSUMPSIT. Atkinson *vs* Stewart, Same *vs* Thayer, Same *vs* Chamberlain.

*Case* 116.

ERROR TO THE JEFFERSON CIRCUIT.

*Assumpsit. Joint sureties. Contribution.*

*May* 11.

JUDGE MARSHALL delivered the Opinion of the Court.

The case stated.  These were three separate actions of assumpsit brought against Atkinson by the other above named parties respectively, each action being upon a single count for money paid and advanced for the defendant. And the question presented by the record is, whether and to what extent such actions can be maintained upon the following facts: a joint and several note for $1500, payable to the President, Directors & Co. of the Bank of Kentucky, and executed by R. S. Davis as principal and Stewart, Thayer, Chamberlain and Atkinson as sureties, having been discounted by said Bank, for the benefit of Davis, and being unpaid at maturity and protested, therefore, Stewart, Thayer and Chamberlain paid and took up the same by paying into Bank something over $50 each, and by executing and procuring to be discounted at the said Bank, their joint and several note for $1350, in which Stewart was named as principal and the other two as sureties, and the proceeds of which were, upon the check of Stewart, passed to the credit and discharge of the protested note. This second note was made and offered and discounted for the benefit of the three parties to it respectively, and had been reduced by payments at the time of the action, to about $900. Shortly after the protested note had been thus paid and taken up, Davis offered and executed to the three parties who had paid his debt, a mortgage on his interest in the right of his wife, in certain slaves of the estate of her father, which, however, were still in the hands of the administrator, and subject to the event of a suit in chancery pending against him, which might render a sale of them necessary. The mortgage contained an express obligation on the part of Davis, to pay to the mortgagees the amount of the $1500 note,

with charges, as a present debt, but provided that, if payment should be made in four months, the mortgage should be void. It also provided that if Atkinson, who took no part in any of these transactions, after the execution of the protested note, should contribute to his co-sureties, the mortgage should be for his benefit as well as for that of the mortgagees. On being informed of these facts, Atkinson approved of the mortgage and promised to pay his proportion of the debt, partly in money and partly in his note due, but understood to be payable, as the Bank might require payment from the others. But he did none of these things.

It may be assumed upon the evidence, that Davis was insolvent, except so far as the contingent interest covered by the mortgage might make him otherwise.

On these facts a verdict was found for each of the plaintiffs, for the amount of one fourth of the protested note of Davis, &c. with the interest thereon; and the verdict and the judgment upon it are, in our opinion, supported by the following propositions, which, as we think, contain the law of the case.

1st. The extinguishment of the original debt in the manner above stated, was such a payment in money or its equivalent, as according to the case of *Robertson* vs *Maxcey*, (6 *Dana*, 101,) and the cases therein cited authorized an action against the principal debtor for so much money paid for his use; and so far as the mere form of action is concerned, the same principle applies to the action against a co-surety. And indeed as by the discount of the note of the three sureties, the money was, in fact, appropriated in Bank to the drawer, the application of it, upon his check, to the original debt, was in truth, a payment of so much money, dispensing only with the useless ceremony of taking the money out of Bank and instantaneously returning it.

2nd. Although in the new note, on which the money was raised, Stewart was named as principal and the other two obligors as his sureties, and although in consequence of this form the amount was applied to the original note upon his check; yet as the new note was resorted to by the three as a means of raising the money

for the benefit of each, for the discharge of a debt for which each was liable separately, and as it was obviously intended to be a payment of one third of the original debt by each, and that each should be liable as between themselves, for one third of the new debt, it cannot be conceded that the cause of action resulting from the payment accrued to Stewart alone, in consequence of its being made on his check as principal; and even if, in consequence of the money with which the payment was made being raised upon the joint credit of the three, it might be considered as a joint payment giving a joint cause of action, it may also, in regard to the substance of the transaction, and to the intended and actual liability of each for his third of the new note, by which the money was raised, be considered as a separate payment of one third of the original debt by each, from which a separate cause of action would result to each for that third, against Davis, the principal debtor, or for one fourth of that third against Atkinson, their co-surety, who had not contributed to the payment, except so far as this latter cause of action might be affected by the solvency or insolvency of Davis, the principal.

3rd. Conceding that the action against the co-surety arises only in consequence of the insolvency of the principal, and to the extent that he is unable to pay., as decided in the case of *Morrison* vs *Poynts*, (7 *Dana*, 307,) and in *Pearson*, &c. vs *Duckham*, (3 *Littell*, 385,) and that when the paying sureties have taken a mortgage from the principal debtor, this circumstance should, on the presumption of solvency to the extent of the mortgaged property, be deemed *prima facie*, sufficient either to translate the cause of action to the equitable forum, or to suspend it until the mortgage is exhausted: *Morrison* vs *Poynts, supra*. Still we are of opinion that the mortgage in this case should not have any such effect, because when taken in connection with the proof relating to the same subject, it affords no presumption of such solvency of the principal as should repel, diminish, or postpone the legal liability of the co-surety to contribute to the sureties who have paid the debt. The property mortgaged furnishes no present means of coercion, either legal or

Where one or more of several joint sureties pays off a note by note in part and money for the residue, and the principal be insolvent, such surety has a right to demand contribution from the other joint sureties, though the substituted note be not fully discharged, and may maintain *indebitatis assumpsit*—

equitable. But its availability depends not only upon the contingent result of a suit in chancery, of uncertain duration, which may sweep it all away, and with which the plaintiffs have no right to interfere, but also upon other contingencies growing out of the rights of the wife, by which the interest of the husband may be entirely superceded. If an action against Davis had been resorted to, the contingent interest which he has mortgaged would not have prevented a return of "*nulla bona*," upon the *fieri facias*, for execution of the judgment. If these actions had been brought without any mortgage having been taken, they could not have been defeated to any extent, by showing the interest which has been mortgaged, as proof of solvency of the principal. And we think it would be unreasonable to say that the present plaintiffs, because they have taken a mortgage, not for the purpose of present indemnity, and which neither furnishes nor promises any present remedy, but only a possible prospective security which may be available at some future period, and which embraces the interest of their co-surety as well as their own, should be, to any extent, postponed or otherwise affected in their remedy against him. The case, in this respect, is clearly distinguishable, not only from the facts but from the principle of the case of *Morrison* vs *Poynts, supra.*

4th. The cause of action against the co-surety, Atkinson, being complete and unaffected by the mere fact of a mortgage, we do not admit that it was affected either by giving time to the principal debtor before the mortgage should be forfeited, or by taking his acknowledgment of the debt and covenant for payment, as a part of the mortgage; both of these acts or circumstances, and especially the former, were, as appears from what has already been said, entirely nugatory, as to any present substantial interest or advantage. The covenant may indeed have merged the simple contract, and the time allowed may have postponed the right of action of the present plaintiff, against Davis the principal debtor. But how did this affect their rights against their co-surety, or his rights or duties in regard either to the principal debtor or to them. The true causes of action by the

And this right of action is not lost or suspended by the surety who thus paid the debt, taking from the principal by way of indemnity, a mortgage upon a merely contingent right, which was not then available, and might never be of any value.

present plaintiffs against the principal, and against their co-surety, were distinct and in no way dependent on each other, except so far as one or the other might be satisfied. The mere merger of the one in a higher security, not susceptible of enforcement and not intended to be enforced to immediate satisfaction, was not a merger of the other; and the suspension of the remedy by the present plaintiff against the principal debtor, did not prevent the co-surety from proceeding against him as soon as by making contribution, he should have any right to do so. His remedy against the principal would not arise from his having paid for him a part of his debt to the other sureties, but from his refunding to them under his original obligation a part of the money which they had paid for the principal, and which he was also bound with them to pay to the Bank. He would not have remedy against his principal by substitution to the right of his co-sureties, but because he had paid money, which as himself being a surety, he was originally bound to pay; and as his right to demand remuneration for such payment would not be affected by the suspension of the remedy of his co-sureties against the principal, so his duty to make the payment would not be affected by it. Atkinson did not stand as surety of Davis to his co-sureties who had paid the debt, but was subject to a separate liability; and the doctrine which releases a surety in consequence of certain arrangements between the creditor and principal debtor does not apply, and Atkinson was not in our opinion released by any or all of the facts referred to.

5th. This being so, the subsequent promise of Atkinson to pay part in money and to give his note, &c. if acceeded to, was at most but an accord without satisfaction, and did not merge the cause of action previously existing. It was, in fact, but an offer to do what was just, and would doubtless have been accepted; but not having been performed it was entitled to no effect in the case.

Wherefore, the judgment in each case is affirmed.

*Duncan* for plaintiff; *Pirtle* for defendants.